**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JAISON ELIAZAR AGUSTIN ARROLLO, et al., | : |
| | : |
| Plaintiffs, | : Case No. 1:25-cv-01700-CJN |
| | : |
| v. | : |
| | : |
| JAMES G. DAVIS CONSTRUCTION | : |
| CORPORATION, et al., | : |
| | : |
| Defendants. | : |

## MEMORANDUM OF LAW IN SUPPORT OF THE PARTIES' JOINT MOTION FOR APPROVAL OF AN FLSA SETTLEMENT AGREEMENT

The Parties respectfully submit this Memorandum of Law in support of their Joint Motion to Approve a Settlement Agreement.

The Court's approval of the Settlement Agreement is appropriate because this case includes claims for unpaid wages under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*, among other claims. The Settlement Agreement resolves all claims in the lawsuit alleging that Defendant Brother's Mechanical Inc., among other defendants, failed to pay straight time wages to all Plaintiffs, overtime wages to certain Plaintiffs, and minimum wages to certain Plaintiffs, in violation of the FLSA, D.C. Minimum Wage Act, and D.C. Wage Payment and Collection Law. The Parties respectfully submit that the terms of the settlement, as memorialized in the Joint Stipulation of Settlement and Settlement Agreement ("Settlement Agreement") attached hereto as Exhibit 1, are fair and reasonable, and satisfy the criteria for approval under Section 216(b) of the FLSA.

For these reasons and as more fully explained below, the Parties request that the Court approve the Settlement Agreement in this case.

## I.    FACTS AND PROCEDURAL HISTORY

Plaintiffs filed the present action on October 11, 2022.  (Docket No. 1.)  Plaintiffs assert causes of action against Defendants Brother's Mechanical, Inc., Leo & M Plumbing LLC, and Jose Leonardo Contreras to recover unpaid wages  and related damages under the federal Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), the D.C. Minimum Wage Act, D.C. Code §§ 32-1001 *et seq.* ("DCMWA"), and the D.C. Wage Payment and Collection Law, D.C. Code §§ 32-1301 *et seq.* "(DCWPCL"), for work performed by Plaintiffs at 1150 1st Street, NE, Washington, D.C. 20002 ("the Project").  Plaintiffs also alleged that Defendant James G. Davis Construction Corporation ("Davis") was vicariously liable as the general contractor for the Project for the claims under the DCWPCL and the DCMWA.

Plaintiffs alleged that Defendants Brother's Mechanical, Inc., Leo & M Plumbing LLC., and Jose Leonardo Contreras failed to pay them straight time wages over the course of differing pay periods, and failed to pay Plaintiffs overtime wages for the entire time they worked on the Project.  Furthermore, certain Plaintiffs allege that these Defendants failed to pay them minimum wages for the entire time they worked on the Project.

On May 30, 2025, Plaintiffs presented the first settlement proposal to Defendant BMI. Thereafter, BMI and Plaintiffs exchanged multiple settlement offers and counteroffers.  After approximately three months of negotiations, on September 6, 2025, BMI agreed to settle the matter, including all claims asserted against Davis, for $459,330.00 in damages to be paid solely by BMI to Plaintiffs.  Over the next two months, the Parties finalized the terms of the Settlement Agreement.  Defendants Leo & M Plumbing LLC, and Jose Leonardo Contreras, have not reached a settlement with Plaintiffs.

## II.    LEGAL STANDARD

While the D.C. Circuit has not opined whether judicial approval is required of settlements reached after an FLSA suit has been commenced, courts in this district often agree to review proposed FLSA settlements when the parties jointly seek judicial approval.  *Eley v. Stadium Grp., LLC*, 236 F. Supp. 3d 59, 62 (D.D.C. 2017).   The Court evaluates fairness of private FLSA settlements by conducting a two-step inquiry that considers whether the proposed settlement (A) resolves a bona fide dispute, and (B) is "fair, reasonable, and adequate, rather than merely a waiver of rights."  Each factor is addressed in turn below.

### A.  The Proposed Settlement Agreement Resolves a Bona Fide Dispute.

When assessing the terms of an FLSA settlement agreement, the court must first determine whether the proposed settlement resolves a "bona fide dispute."  *D.A. Schulte, Inc., v. Gangi*, 328 U.S. 108, 111–12 (1946); *Carrillo v. Dandan Inc.*, 51 F. Supp. 3d 124, 131 (D.D.C. 2014).  A settlement is "bona fide" if it reflects a reasonable compromise over issues that are actually in dispute, since merely waiving a right to wages is not permissible.  *Gangi*, 328 U.S. at 115; *Carrillo*, 51 F. Supp. 3d at 132.

In the instant matter, Defendant David denies that it has liability to the Plaintiffs. Defendant BMI disputes that it is Plaintiffs' "employer" under the FLSA.  Similarly, there is a bona fide dispute as to the amount of wages owed to the Plaintiffs, and the number of hours they each worked at the Project.  These disputes would have been submitted for resolution at summary judgment. Indeed, "the most fundamental question in any FLSA action, namely, the amount of wages owed to the plaintiff, is contested, rendering the settlement agreement[] a compromise over a bona fide dispute."  *Sarceno v. Choi*, 78 F. Supp. 3d 446, 450 (D.D.C. 2015).

The Settlement Agreement resolves these contested issues, and the Plaintiffs are not merely waiving their FLSA rights.  Plaintiffs are releasing claims of value in exchange for a settlement

3

payment that maximizes the unpaid wages and liquidated damages the Plaintiffs are entitled to under the FLSA.  For these reasons, the Settlement Agreement resolves a bona fide dispute.

**B.  The Proposed Settlement Agreement Is Fair and Reasonable**.

The Parties' proposed terms for settling this matter are fair and reasonable in light of the totality of the circumstances surrounding the Settlement Agreement.  The D.C. Circuit has applied the "totality of the circumstances" approach in determining whether a settlement is fair and reasonable.  Under this approach, "the focus is on the fairness of the process used by the parties to reach settlement and the practical ramifications of the settlement."  *Carrillo*, 51 F. Supp. 3d at 132 (quoting *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365–66 (S.D.N.Y. 2013)) (internal quotation marks omitted).  The court considers "whether the proposed settlement (1) was the product of overreaching by the employer; (2) whether the settlement was the product of negotiation between represented parties following arm's length bargaining; and (3) whether there exist serious impediments to the collection of a judgment by the plaintiffs."  *Id.*  In making this evaluation, a "[c]ourt should be mindful of the strong presumption in favor of finding a settlement fair."  *Sarceno*, 78 F. Supp. 3d at 451.

1.  <u>The Settlement Agreement Is Not the Result of Employer Overreach</u>.

District Courts in this Circuit have found that "[a] settlement that provides total damages closer to that asserted by the plaintiffs than the defendants would not appear to be one that is a product of employer overreaching."  *Carrillo*, 51 F. Supp. 3d at 133–34; *Eley*, 236 F. Supp. 3d at 65; *Sarceno*, 78 F. Supp 3d at 451.

Here, for purposes of calculating damages owed to Plaintiffs, Defendants deferred to Plaintiffs' allegations in the Complaint.[1]  The gross settlement amount is $459,330.00, which is

---

[1] To calculate damages, Plaintiffs relied on photos of BMI timesheets produced by Plaintiffs themselves and some timesheets from BMI, which showed the hours worked per day.  Plaintiffs

substantial given the risks of litigation, and exceeds the maximum statutory damages for unpaid wages and liquidated damages that Plaintiffs are entitled to under the FLSA.  While the DCMWA and DCWPCL provide for additional statutory damages, Plaintiffs' Counsel estimates that the settlement amount contemplates seventy-five percent of the statutory damages and penalties owed pursuant to District of Columbia law.[2]  Therefore, the Court should find that the Settlement Agreement is not a result of employer overreach, especially since the total damages reflect and adopt Plaintiffs' assertions.

Furthermore, the Plaintiffs can continue to pursue Defendants Leo & M Plumbing LLC., and Jose Leonardo Contreras, for additional sums.

2.   The Settlement Agreement Is the Result of Arm's Length Negotiation.

The federal courts have consistently found that "[a]rm's length bargaining between represented parties weighs in favor of finding a settlement reasonable." *See, e.g., Lliguichuzcha*, 948 F. Supp. 2d at 366.  Negotiations which occur over an extended period of time are often presumed to be arm's length. *See, e.g.*, *Sarceno*, 78 F. Supp. 3d at 451.  In this case, the first formal settlement proposal was presented on May 30, 2025.  Since then, the Parties have exchanged offers and counteroffers.  In addition, the settlement negotiations occurred only after appropriate investigation of the claims and defenses available to the Parties.  *See*, *Carrillo*, 51. F. Supp. 3d at 134; *Eley*, 236 F. Supp. 3d at 64.

Further, where all parties are "represented by counsel with extensive experience in the litigation and negotiation of FLSA disputes," this factor is usually satisfied.  From the outset, the

---

multiplied the number of hours worked by the applicable wage rate – *i.e.*, straight time rate or, as applicable, overtime wage rate and minimum wage rate – to determine the back wages owed.

[2] According to Plaintiffs' calculation, the maximum actual damages under the DCMWA and DCWPCL for all plaintiffs was $612,440.00.

Parties have been represented by Counsel, all of whom have experience in prosecuting and defending wage-and-hour actions. As a whole, the process by which the instant Settlement Agreement was reached bears all the indicia of a process that typically leads to a just outcome.

        3.   Serious Impediment to Collection of Judgment.

The Court must also consider whether the settlement has taken into account "the potential benefits and pitfalls of proceeding to trial" and, in particular, whether Plaintiffs might face any difficulty collecting a judgment. *See, e.g.*, *Sarceno*, 78 F. Supp. 3d at 452; *Lliguichuzhca*, 948 F. Supp. 2d at 365. While this factor can weigh in favor of approval, a finding of no risk should not weigh against it. Even where no party asserts a serious risk of collection, "by settling now, the plaintiffs will obtain a recovery without further delay and without incurring additional litigation costs and additional attorney's fees and costs." *Carrillo*, 51 F. Supp. 3d at 134 (internal quotation marks omitted).

In this case, Counsel for all Parties believe in the merits of their clients' positions, but nonetheless recognize that litigation involves uncertainty in terms of duration, cost, result, and post-judgment collection. For example, Plaintiffs will incur significant out-of-pocket costs litigating this case against four different Defendants, and each Defendant's liability is uncertain. Furthermore, Defendants raised affirmative defenses to Plaintiffs' claims and the outcome of such defenses is uncertain. Finally, even if Plaintiffs prevail on its claims against Defendants, it may take months, if not years, to obtain a judgment, and post-judgment collection is uncertain. In light of the uncertainty surrounding continued litigation of this case, the certainty offered by the Settlement Agreement favors the Court's approval at this time.

## III.    CONCLUSION

For the foregoing reasons, the Parties respectfully request that this Court approve the Parties' Joint Motion for Approval of a Settlement Agreement.